**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

YVONNIE WILLIAMS,                  §
                                   §
            Plaintiff,             §
                                   §
*versus*                           §        CIVIL ACTION NO. 1:10-CV-156
                                   §
CVS PHARMACY, INC.,                §
                                   §
            Defendant.             §

### MEMORANDUM AND ORDER

Pending before the court is Defendant CVS Pharmacy, Inc.'s ("CVS") Motion for Summary Judgment (#38) on Plaintiff Yvonnie Williams's ("Williams") claim that she was discharged because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000h-6.[1]  Williams opposes CVS's motion, asserting that outstanding issues of material fact make judgment as a matter of law inappropriate.  Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.     Background

This employment discrimination suit arises from CVS's termination of Williams, an African-American female.  Prior to her employment with CVS, Williams had a long history as an assistant manager and manager at an Eckerd pharmacy.  On August 1, 2004, CVS acquired the Eckerd pharmacy chain, and Williams became a CVS employee, continuing her position as store manager at the company's Nederland, Texas, location.  According to CVS guidelines, Williams's

---

[1] Williams alleges that the termination of her employment was based solely on race.  Although her brief mentions in passing that she was occasionally treated differently due to her gender, her amended complaint alleges only racial discrimination.

responsibilities as store manager included protecting store assets, locking security doors, identifying and reacting to in-store repairs, executing the weekly payroll, supervising employees, and stocking the shelves.

In January 2007, CVS relocated its Nederland store to a significantly larger location nearby. Approximately two months prior to the relocation, David Kough ("Kough"), a Caucasian male, became the district manager with responsibility over the Nederland store. Kough claims that he quickly identified Williams as an unsatisfactory employee, chiefly because she struggled to order and stock inventory properly. Because Kough anticipated a dramatic increase in front-end sales volume and pharmacy traffic at the new location, he met with Williams to discuss his concern that she was not equipped to manage the new, larger store in accordance with CVS standards. During that meeting, Kough informed Williams that, despite his reservations, she would have an opportunity to demonstrate her capabilities at the new location.

The Rental Truck Incident

A few weeks later, numerous area store managers assisted in the relocation of the Nederland store. Specifically, managers transported merchandise in rental trucks from the old to the new location. During this process, Kough and Williams discussed a truck containing CVS merchandise that required unloading, although the parties dispute the exact content of the conversation. CVS claims that, after Williams told Kough she had lost the key to the back of the truck, he arranged to have the padlock removed and instructed Williams to replace the lock and secure the vehicle's door. The following morning, according to Kough, he found the truck without a padlock and inferred that it had been left unsecured overnight. Williams, on the other hand, avers that Kough did not direct her to secure the truck and maintains that doing so was not

2

her responsibility because she had not driven the vehicle that day.  Further, Williams contends that the vehicle contained only "damaged goods, junk" rather than valuable merchandise.  In any event, when reprimanded by Kough, Williams informed him that she believed other employees were responsible for the truck.  In response, Kough made clear that, as store manager, Williams would be held responsible for leaving the vehicle unsecured.  Pursuant to the recommendation of the area human resources director, Kough issued Williams a final written warning for failure to protect company assets and a first written warning for failure to perform up to CVS's standards for store manager.

### Mike Cooney ("Cooney") Assumes the District Manager Position

In early 2008, Cooney, a Caucasian male, replaced Kough as district manager.  In preparation for Cooney assuming his post, Kough shared information with him, both in-person and via e-mail, about all of the area store managers, including Williams.  During those communications, Kough notified Cooney of the rental truck incident and Williams's final written warning.

Thereafter, from early 2008 until August 2008, Williams received several "coachings" from Cooney and at least one warning, via e-mail, that her performance was unacceptable.  Specifically, Cooney issued Williams a "coaching" on January 28, 2008, for submitting payroll late and incorrectly.  Next, on March 12, 2008, Cooney issued Williams a final warning for the same violation when she again failed to submit payroll timely and accurately.  The "coaching" and counseling form informed Williams that she would be terminated if she committed another similar infraction.

3

Subsequently, on August 20, 2008, Cooney sent Williams an e-mail reprimanding her for maintaining "poor stock and store conditions" after he observed three customers request products that were unavailable on the store's shelves. In the message, Cooney notified Williams that a copy of the communication would be placed in her employment file. Shortly thereafter, on August 27, 2008, Williams received two additional written "coachings." Cooney issued the first warning after Williams failed to file her "promo orders," which were used to ensure that each store had sufficient stock to support items currently on sale, in a timely manner. Williams was also notified of the possibility of termination if she failed to file the orders correctly in the future. Additionally, Williams received a second, unrelated written warning on the same day for failing to train and follow-up with sales associates regarding monthly upsell items.

At deposition, Williams acknowledged her signature on these August 27, 2008, "coachings," but claimed that Cooney directed her to sign them after the fact on the day of her discharge. Moreover, Williams disputes the legitimacy of Cooney's criticisms and maintains that she told him these incidents resulted from the failings of her subordinates, such as her assistant manager. Additionally, Williams now claims Cooney targeted her for termination because he knew his predecessor, Kough, had "set [her] up" for discharge.

<u>Hurricane Gustav</u>

During the last week of August 2008, Hurricane Gustav threatened the Nederland area, and a mandatory evacuation was issued. Cooney held a meeting with all store managers to discuss the hurricane and to stress the importance of keeping CVS stores open with managers present before, during, and after the storm. Williams, however, planned to evacuate the area and was, therefore, unable to work during the hurricane. Upon learning of Williams's evacuation plans, Cooney

4

called the Nederland store and told Williams's coworker, Darlene Champagne ("Champagne"), that he wanted to talk to Williams about the importance of management being present during the storm and scheduling someone to cover for her in her absence. Champagne informed Cooney that, although Williams was not scheduled to work that day, she planned to visit the Nederland store that evening to finish payroll before evacuating. Cooney responded by requesting that Williams call him when she arrived. When Williams later telephoned Cooney, he implored her to remain in town until he could find a manager to replace her during her absence. Williams claims that when she declined to stay past the evacuation deadline, Cooney became upset and verbally reprimanded her for being irresponsible.

Cooney then assigned Jane Doe ("Doe")[2], who is white, and Andy Flowers ("Flowers"), an African-American, to serve as store managers at the Nederland location during Williams's absence. While Doe and Flowers were covering the store, Hurricane Gustav damaged the front automatic doors and the emergency doors on the side and back of the building. Cooney instructed Doe and Flowers to inform Williams of the broken doors and to direct her to file a request with the CVS company-wide repair line. Both Doe and Flowers claim that on September 2, 2008, they told Williams about the malfunctioning doors and reminded her to ensure their repair.

Hurricane Ike

Several weeks later, Hurricane Ike hit the Nederland area. Williams evacuated from September 11 through 18, 2008, during which time Doe again managed the Nederland store. On

---

[2] Doe was the store manager of CVS's Orange, Texas, location. While Doe's identity is known to the court and the parties, she is referred to by a pseudonym throughout this opinion pursuant to the parties' agreed protective order, signed February 7, 2012. Doe also had the day off on August 30, 2008, and did not visit her store prior to Gustav's arrival. Nevertheless, Cooney did not telephone Doe to reprimand her for her absence. Notably, however, Doe had no plans to evacuate during the hurricane and was able to serve as manager during the storm, as requested by Cooney.

the morning of September 14, 2008, after the hurricane had passed, Doe went to check the store for damage.  When she arrived, Doe observed pieces of the metal doorframe on the floor inside the store and merchandise strewn about.  Although she initially assumed the store had been burglarized, the police later told Doe that officers had observed the store doors open that morning during their post-hurricane patrol, closed them, and exited through the back of the store.  The officers surmised that hurricane winds had likely blown the doors open.  Based on this information, Doe concluded that a burglary probably had not occurred.

When Cooney arrived at the store shortly thereafter, he observed the broken door frame and the displaced merchandise and also presumed a break-in had occurred.[3]  In spite of the officers' opinion that the debris was caused by Hurricane Ike, Cooney instructed Doe to call the police and report a burglary.  Doe responded that she felt uncomfortable calling to report a crime because the police had already determined a break-in was unlikely.  Cooney, however, allegedly insisted, stating that he might need the report in the future and that Doe may one day be managing the Nederland store.  Accordingly, Doe called the police, who recorded the possible burglary but did not revisit the scene.

As a result of this incident, Cooney questioned whether Williams ensured the repair of the broken doors after Hurricane Gustav.  In response to Cooney's inquiry, Williams produced two work order numbers and completion codes that she claimed corresponded with the repair of the doors.  Cooney and his secretary both independently called the CVS repair line to inquire whether the broken doors had been reported.  On each occasion, the repair line operator responded that there was no record of any such request.  Cooney also e-mailed Adam Al-Almra ("Al-Almra"),

---

[3] As a result of a power outage during the storm, surveillance footage was not available to determine whether there had been a burglary.

who worked in CVS's human resources department, to inquire about the specific repair requests that corresponded with each order number.   After investigating both reports, Cooney and Al-Almra found that neither referenced hurricane damage to the front automatic doors.   Rather, the first code related to the repair of the checkpoint pedestal alarm customers walk through when exiting the store.   The second pertained to the repair of the burglar alarm contacts on the side door and back emergency exit.[4]   Based on this information, Cooney concluded that Williams failed to report and ensure the repair of the front automatic doors as instructed.

On the morning of September 26, 2008, Cooney and Al-Almra met with Williams at the Nederland store.   During their conversation, the men attempted to issue Williams additional written "coachings," but she refused to sign them because she "saw where [Cooney] was going" and disagreed with his criticism.   At that time, Cooney notified Williams that his investigation of the broken front doors revealed no evidence that she had requested their repair.   He then informed Williams that, in light of the fact that Kough had already issued her a final written warning for failing to protect company assets in early 2007, her employment with CVS would be terminated.

Williams filed a charge of discrimination with the Equal Employment Opportunity Commission on March 9, 2009.   The parties did not provide the court with any information pertaining to when she received her right-to-sue letter.   Nevertheless, on March 17, 2010, Williams filed the above-styled action, asserting a claim of discrimination under Title VII. Thereafter, on September 22, 2010, she amended her complaint.   On March 12, 2012, CVS filed the instant motion, seeking summary judgment on Williams's claims.   CVS argues that Williams

---

[4] Williams alleges that these reports were intentionally altered to delete a portion of the repairs she requested, including the malfunctioning front doors.   She further avers that an e-mail in the correspondence between Cooney and Al-Almra was deleted to conceal evidence.   These contentions will be discussed *infra*.

has failed to establish a *prima facie* case of discrimination.  Additionally, CVS contends that, even if the court finds sufficient evidence to set forth a *prima facie* case of discrimination, it has articulated a legitimate, nondiscriminatory reason for Williams's discharge, specifically, her history of failing to protect company assets.  Finally, CVS avers that Williams has failed to offer any evidence that this reason was a pretext for discrimination.

Williams responds that she has proffered adequate evidence to support a *prima facie* case of discrimination.  She further contends that the record contains sufficient evidence for a reasonable jury to determine that CVS's legitimate, nondiscriminatory reason for her termination was a pretext for discrimination.

II.    Analysis

A.    Page Limitations

As a threshold matter, CVS moves in its reply brief to strike Williams's response due to the fact that it exceeds the maximum page length for dispositive motions and responses set forth in Local Rule CV-7(a)(1).  It is well established that "district courts have considerable latitude in applying their own rules." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990); *accord Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (recognizing the district court's broad "discretionary authority to formulate and enforce local rules").  Although a court will not tolerate repeated violations of the local rules, the court has discretion to rule on the substantive merits of a case.  *See In re DePugh*, 409 B.R. 125, 142 n.10 (S.D. Tex. 2009) ("Courts are vested with a large measure of discretion in applying and enforcing local rules."); *Estate of White v. Hartford Life & Accident Ins. Co.*, No. 4:07-CV-145, 2007 WL 7217079, at *4 n.3 (S.D. Tex. Oct. 11, 2007).  Here, CVS correctly notes that Williams was

8

required to obtain leave of court to exceed the page limit.  The court, however, declines to strike Williams's response in the interest of moving forward with this litigation.  *See Webb*, 457 F. App'x at 452 (stating that the court's discretion in the enforcement of local rules is designed to facilitate "orderly and expeditious handling of cases"); *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 741 (5th Cir. 2010) (recognizing the district court's "broad discretion over matters concerning its own docket").

B.     Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a

sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in

original). Thus, a genuine issue of material fact exists, "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Bayle

v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins.

Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire &

Rubber Co.*, 423 F.3d at 454. The moving party, however, need not negate the elements of the

nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536,

540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994));

*Millenium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir.

2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere

allegations or denials in the pleadings but must present affirmative evidence, setting forth specific

facts to show the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3

(quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Bayle*, 615 F.3d at 355; *EMCASCO

Ins. Co.,* 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th

Cir. 2004). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (*quoting Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*,

420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable

to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility.

*Reeves*, 530 U.S. at 150; *EEOC v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 615 (5th Cir.

2009); *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Brown v. City of Houston*,

337 F.3d 539, 541 (5th Cir. 2003).  The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor.  *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)).  "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in [her] favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008).  The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007); *Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540.  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

11

sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

C.   Discriminatory Discharge

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *accord Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007); *Roberson v. Alltel Info. Servs.*, 373

F.3d 647, 651 (5th Cir. 2004).  "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)); *see also Smith v. City of Jackson*, 351 F.3d 183, 194 (5th Cir. 2003).

Title VII discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)); *accord Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)); *accord Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005).

"Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)."[5] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see Reeves*, 530 U.S. at 142-43; *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *Turner*, 476 F.3d at 346.  Under that framework, the plaintiff must

---

[5] Because the parties' briefing discusses only circumstantial evidence of discrimination, the court will limit its discussion accordingly.

initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142-43; *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012); *Alvarado*, 492 F.3d at 611; *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quotation omitted); *accord Turner*, 675 F.3d at 892 ("The burden of establishing a *prima facie* case of disparate treatment is not onerous."); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593; *Turner*, 476 F.3d at 345. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *accord Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Alvarado*, 492 F.3d at 611. "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507) (emphasis in original)); *accord Vaughn*, 665 F.3d at 636; *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

14

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510); *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 271 (5th Cir. 2011); *Nasti*, 492 F.3d at 593; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.), *cert. denied* 546 U.S. 1061 (2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Nasti*, 492 F.3d at 593; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753-54 (5th Cir. 2005); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001).

In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[6] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)); *accord Vaughn*, 665 F.3d at 636; *Fahim*, 551 F.3d at 349; *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir.

---

[6] Williams does not contend that CVS acted with a mixed motive in this case.

2007), *cert. denied*, 552 U.S. 1166 (2008); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

Ultimately, "whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49); *accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

### 1.    *Prima Facie* Case of Discriminatory Discharge

To establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff may show that:

(1)    she is a member of a protected class;

(2)    she was qualified for the position;

(3)    she was discharged; and

(4)    she was replaced by someone outside the protected class.

*See Fahim*, 551 F.3d at 350; *Alvarado*, 492 F.3d at 611; *McCoy*, 492 F.3d at 556; *Turner*, 476 F.3d at 345; *Wheeler*, 415 F.3d at 405.   Nevertheless, "it is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII." *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246-47 (5th Cir. 1985)); *see Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir.

16

2000); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).   Thus, in the alternative, a plaintiff may establish a *prima facie* case by demonstrating that she is a member of a protected class, she was qualified for the position, and similarly situated persons outside the class were treated more favorably than she.   *See Fahim*, 551 F.3d at 350, *Alvarado*, 492 F.3d at 611; *McCoy*, 492 F.3d at 557; *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Laxton*, 333 F.3d at 579 n.1.

To establish a *prima facie* case in this manner, the plaintiff must show that employees not of her protected class received preferential treatment under circumstances nearly identical to hers. *See Berquist*, 500 F.3d at 353; *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)); *see also Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (emphasizing that assessment of similarity of employees must be viewed from the employer's perspective).   In other words, Williams must show that a non-black employee, who engaged in comparable conduct under similar circumstances, was not terminated.   *See Aguinaga v. Tex. Alcohol & Beverage Comm'n*, 98 F. App'x 328, 331 (5th Cir. 2004) (holding that plaintiff failed to establish a *prima facie* case of discrimination because he did not provide comparator employees in "nearly identical" circumstances, given their different supervisors, job descriptions, and disciplinary rules).

In the instant case, the first three elements of Williams's *prima facie* case of discrimination are undisputed.   As an African-American, Williams is a member of a protected class under Title VII.   Furthermore, her twenty years of experience as an assistant manager and manager show that

she was qualified for the position.  *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (recognizing that a plaintiff with twenty years of experience in the automotive field was qualified for a director position at defendant's car dealership); *accord Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.10 (1st Cir. 1979) ("[U]nless the employee's job has been redefined, the fact that he was hired initially indicates that he had the basic qualifications for the job, in terms of degrees, certificates, skills and experience.").  Finally, Williams clearly suffered an adverse employment action when she was discharged from CVS.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) ("[I]t is beyond dispute that a termination constitutes adverse action.").  The parties, however, disagree as to whether the fourth element of a *prima facie* case of discrimination has been satisfied.  CVS argues that Williams failed to produce any evidence that similarly situated employees outside of her protected class were treated more favorably.  In response, Williams points to the fact that she was expected to be in her store on August 30, 2008, to prepare for Hurricane Ike, while Doe was permitted to take the day off.

It appears, however, that this dispute is immaterial, at least as it pertains to Williams's *prima facie* case, because the record reveals that Williams was replaced by a Caucasian after her termination.  Specifically, Doe stated at deposition that Williams's post was assumed by a white male after her discharge.  This portion of Doe's deposition is undisputed by defense counsel and, therefore, the court finds that Williams has successfully established a *prima facie* case of discriminatory discharge.

2.   Legitimate, Nondiscriminatory Reason for Discharge

As previously discussed, because Williams has established a *prima facie* case of discrimination, the burden shifts to CVS to articulate a legitimate, nondiscriminatory reason for

18

its employment decision. *Raytheon Co.*, 540 U.S. at 49 n.3; *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Fahim*, 551 F.3d at 349; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593; *Turner*, 476 F.3d at 345. "The purpose of this step is to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997) (quotation omitted); *accord Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261 (2000). "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis omitted); *accord Nasti*, 492 F.3d at 593 (citing *Burdine*, 450 U.S. at 254); *Patrick*, 394 F.3d at 315; *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). Hence, the defendant's burden is relatively light. *See Greenway*, 143 F.3d at 52.

"If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *Hicks*, 509 U.S. at 509); *accord Piper v. Veneman*, 183 F. App'x 407, 409 (5th Cir. 2006); *Price*, 283 F.3d at 720. "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Loeb*, 600 F.2d at 1012 n.6; *accord Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999). Indeed, even an employer's "'incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.'" *Mayberry v.*

*Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co, Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see also Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010). The articulated reason, however, must be both "'clear and reasonably specific.'" *Okoye*, 245 F.3d at 513 (quoting *Burdine*, 450 U.S. at 258); *see Alvarado*, 492 F.3d at 616. Furthermore, it "'must be legally sufficient to justify a judgment for the [employer].'" *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998) (quoting *Burdine*, 450 U.S. at 255); *accord Patrick*, 394 F.3d at 319 n.34. If the defendant sustains its burden of production, "the presumption raised by the plaintiff's *prima facie* case essentially disappears, and the plaintiff is left with the ultimate burden which has never left him: that of proving that the defendant intentionally discriminated against him." *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 776 (5th Cir.), *cert. denied*, 522 U.S. 1015 (1997); *accord Reeves*, 530 U.S. at 143; *Nasti*, 492 F.3d at 593; *Wheeler*, 415 F.3d at 405; *Laxton*, 333 F.3d at 578; *Sandstad*, 309 F.3d at 897.

Here, CVS has produced sufficient evidence of a legitimate, nondiscriminatory reason for discharging Williams; namely, her history of failing to protect company assets and other infractions of company policy. For example, the record reflects that Williams was initially reprimanded for leaving company assets unsecured after the rental truck incident in February 2007. At that time, Kough informed Williams that a subsequent, similar failure would result in her termination. Thereafter, on September 2, 2008, Doe and Flowers notified Williams that the front breakaway doors at her store required repair due to hurricane damage. During Hurricane Ike, however, the store's front doors were forced open, causing Cooney to question whether Williams had ensured their repair after Hurricane Gustav. Moreover, after investigating the repair requests supplied by Williams, Cooney found that neither contained any reference to the broken

front door. Based on this incident, Cooney discharged Williams for her second failure to protect company assets.[7] Thus, CVS has met its burden of production by articulating a legitimate, nondiscriminatory reason for discharging Williams. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, nondiscriminatory reason for discharge."); *Smith v. Int'l Paper Co.*, 275 F.3d 45, 45 (5th Cir. 2001) (finding that an employee's history of disciplinary actions in lieu of termination constituted legitimate reason for adverse employment action).

### 3.   Evidence of Pretext

Because CVS has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, to prevail, Williams "'must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination.'" *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999) (quotation omitted); *see Reeves*, 530 U.S. at 143; *Hicks*, 509 U.S. at 507-08; *McDonnell Douglas Corp.*, 411 U.S. at 804; *Vaughn*, 665 F.3d at 637; *Machinchick*, 398 F.3d at 351; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 897. Pretext may be established "'either through evidence of disparate treatment or by showing that the employer's explanation is false or 'unworthy of credence.'" *Nasti*, 492 F.3d at 593 (quoting *Laxton*, 333 F.3d at 578); *see also Vaughn*, 665 F.3d at 637. Nevertheless, "the plaintiff always bears the burden of 'persuading the trier of fact that the defendant intentionally discriminated' against [her]." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 n.5 (5th Cir. 2004) (quoting *Reeves*, 530

---

[7] Williams dedicates much of her brief to disputing CVS's characterization of the Hurricane Ike incident as a "break-in." It is immaterial, however, whether the doors were forced open by burglars or hurricane winds. In either case, CVS had a legitimate reason to terminate Williams, as company assets were put at risk as a result of the malfunctioning doors.

U.S. at 143); *see also Vaughn*, 665 F.3d at 637; *Nasti*, 492 F.3d at 593; *Baker*, 430 F.3d at 753-54; *Bryant*, 413 F.3d at 476 n.3.   "To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination." *Nasti*, 492 F.3d at 593; *accord Laxton*, 333 F.3d at 578.

While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom'" may still be considered "'on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10); *see Ameristar Airways, Inc. v. Admin. Review Bd.*, 650 F.3d 562, 567 (5th Cir. 2011); *Laxton*, 333 F.3d at 582.  Further, if "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford*, 234 F.3d at 903 (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see Reeves*, 530 U.S. at 143; *Laxton*, 333 F.3d at 585. Nevertheless, "discrimination suits still require evidence of discrimination." *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001); *accord Ratliff v. City of Gainesville*, 256 F.3d 366, 360-61 (5th Cir. 2001); *Ganheart v. Xavier Univ. of La.*, No. 07-9703, 2009 WL 24227, at *11 (E.D. La. Jan. 2, 2009).  "[T]he question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff . . . . on the basis of race." *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001), *cert. denied*, 540 U.S. 1005 (2003) (citing *Hicks*, 509 U.S. at 511).

"On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*,

22

283 F.3d at 720; *accord Franklin v. Boeing Co.*, 232 F. App'x 408, 410 (5th Cir. 2007);
*Rubinstein*, 218 F.3d at 400; *Holmes v. Drug Enforcement Admin.*, 512 F. Supp. 2d 826, 844
(W.D. Tex. 2007).  Hence, the plaintiff's assertion of pretext must be supported by more than
mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently
specific, substantive reasons for her claim of pretext.  *See Jackson v. Cal-W. Packaging Corp.*,
602 F.3d 374, 379 (5th Cir. 2010); *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th
Cir. 2008); *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001); *Bauer*,
169 F.3d at 967.  If the evidence presented is "not so persuasive so as to support an inference that
the real reason was discrimination," then the plaintiff has failed to meet her burden.  *Rubinstein*,
218 F.3d at 400; *accord Price*, 283 F.3d at 724.  "Certainly there will be instances where,
although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject
the defendant's explanation, no rational factfinder could conclude that the action was
discriminatory."  *Reeves*, 530 U.S. at 148; *accord West*, 330 F.3d at 385; *Price*, 283 F.3d at 720;
*Okoye*, 245 F.3d at 514; *Smith v. Hewlett-Packard Co.*, 512 F. Supp. 2d 587, 601 (N.D. Tex.
2007).  For example, summary judgment would be appropriate "if the plaintiff created only a
weak issue of fact as to whether the employer's reason was untrue and there was abundant and
uncontroverted independent evidence that no discrimination had occurred."  *Reeves*, 530 U.S. at
148; *accord Burrell*, 482 F.3d at 415; *Machinchick*, 398 F.3d at 351 n.14; *Smith*, 512 F. Supp.
at 601-02.

a.   <u>Disparate Treatment</u>

As discussed above, pretext may be established "'either through evidence of disparate
treatment or by showing that the employer's explanation is false or 'unworthy of credence.'"

Williams explicitly states several times in her brief that this is not a disparate treatment case. Nonetheless, she focuses heavily on the notion that Cooney became irritated when Williams planned to evacuate for Hurricane Gustav. Cooney evidently did not reprimand Doe, however, for her absence prior to the storm. Nonetheless, Cooney's differing treatment of the two employees does not serve to show pretext because Doe and Williams were not similarly situated. "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." *Bryant*, 413 F.3d at 478; *see also Turner*, 675 F.3d at 893; *Keelan,* 407 F.3d at 345; *Perez*, 395 F.3d at 210 (emphasizing that assessment of similarity of employees must be viewed from employer's perspective); *Wallace*, 271 F.3d at 221. Here, Doe simply is not similarly situated because, unlike Williams, she had no plans to evacuate in advance of Hurricane Gustav. Furthermore, she did not, in fact, evacuate, but instead served as a manager of the Nederland location during Williams's absence. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (recognizing the critical requirement in disparate treatment cases that the "plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions"). Moreover, it is undisputed that Doe was eventually terminated by CVS for the very infraction that Williams's allegedly committed—failure to protect company assets. Accordingly, in the event that Williams intended to proffer Doe as a comparator to show pretext on the part of CVS, her efforts are unavailing.

b.      False or Unworthy of Credence

i.      Deposition Discrepancies

In an attempt to negate CVS's proffered reason for her termination, Williams asserts that CVS's explanation is false or unworthy of credence.  Specifically, she attacks Cooney's credibility by highlighting various "discrepancies" in his deposition testimony, such as the assertion that Cooney purportedly denied becoming angry and criticizing Williams's job performance after he learned of her plans to evacuate in advance of Hurricane Gustav.[8]  The court notes, however, that Cooney testified at deposition that he was "frustrated" with Williams's decision to evacuate before a replacement manager was located.  Furthermore, Williams concedes that Cooney never made disparaging remarks about her race during their conversation regarding her evacuation plans or, indeed, at any time during her employment.  Therefore, the disagreement between the parties on this issue appears to be one of semantics and is not a material dispute sufficient to defeat summary judgment.

Williams additionally points to several discrepancies between Cooney and Doe's account of the alleged break-in at the Nederland store after Hurricane Ike.  In particular, Williams takes issue with the fact that Cooney claims Doe did not dispute his characterization of the event as a burglary.  Doe, on the other hand, maintains that she told Cooney the police believed the store doors were blown open during the storm.  Moreover, Williams faults Cooney for his recollection

---

[8] Williams's briefing also points out that Cooney gave conflicting answers at deposition regarding whether he had ever viewed CVS's "2008 Hurricane Package," which set forth the company's evacuation policy.  This "apparent self contradiction," as labeled by Williams, however, is completely irrelevant and is not sufficient to defeat summary judgment.  In any event, the package recognized that many storm preparations would be coordinated by an employee's district manager, *i.e.*, Cooney.

that he observed the store's front doors standing open after the hurricane; Doe remembers that they were closed.

Even viewing these purported discrepancies in the light most favorable to Williams, they fail to amount to cognizable evidence of pretext. Indeed, "[o]nce an employer has provided a nondiscriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006); *accord Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008). Moreover, given that Cooney's deposition occurred in December 2011, more than three years after the incident in question, it is not surprising that his memory differed from Doe's in some respect. *See Manuel v. Potter*, 685 F. Supp. 2d 46, 65 (D.D.C. 2010) (noting that deponent's limited recollection of details about an event did not undermine his credibility or demonstrate pretext where deposition occurred nearly four years later). Most importantly, the issues raised by Williams do not directly relate to CVS's proffered reason for her discharge; namely, her repeated failure to protect company assets. *See Jackson v. Watkins*, 619 F.3d 463, 467-68 (5th Cir. 2010) (affirming summary judgment for employer where employee did not offer "evidence tailored to rebut [the defendant's] specific reason" for termination); *Turner*, 476 F.3d at 346 (stating that a plaintiff "must offer specific evidence refuting the factual allegations underlying [the defendant's] reasons for her termination"). In short, these disputed facts are not material and have no bearing on the truth or falsity of CVS's

stated reason for terminating Williams—the company's belief that she had failed to protect its assets.

### ii.   Cooney's Behavior

Williams also attacks Cooney's credibility by asserting that he "behaved rudely" toward her. The various perceived slights by Cooney, however, either real or imagined, provide no basis for relief. While perhaps inconsiderate or discourteous, these unspecified, *de minimis* occurrences are not cognizable under Title VII. "[H]urt feelings, anger and frustration are part of life." *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002); *see also Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 224 (5th Cir. 2011). "'[N]ot every insult, slight, or unpleasantness gives rise to a valid Title VII claim." *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). "'Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" *Aryain*, 534 F.3d at 482 (quoting *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987) (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987))). In any event, "Title VII is not directed against unpleasantness per se . . . ." *Carr v. Allison Gas Turbine Div. Gen. Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994). Nor is it a "'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *accord Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). "At best, [Williams's] evidence, if believed, may allow an inference that [Cooney] disliked [Williams]. However,

evidence of mere dislike is not enough to prove pretext under Title VII . . . ." *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 143 (5th Cir. 1996).

### iii.   Stray Remarks

Williams relies heavily on several of Cooney's statements to other CVS employees to demonstrate pretext. Specifically, she claims that Cooney's comments to Doe that: (1) he may need to "use" the police report filed after Hurricane Ike and (2) Doe may be "running" the Nederland store at a later date illustrate that he was targeting Williams for termination. She similarly focuses on an e-mail Cooney sent to Al-Almra asking him to investigate the completion codes pertaining to the repair of the store's front doors provided by Williams.[9] In that e-mail, Cooney states that "[t]his [investigation] is the last thing before this is a done deal." Williams contends these comment are evidence of pretext.

These remarks are facially neutral, however, as they make no reference to Williams's race. "Facially neutral remarks and legal conclusions, such as those involved here, are useless to the plaintiff because they are incapable of addressing the central issue in these cases:  was [race] a

---

[9] Williams argues that she is entitled to a spoliation inference because the body of the initial e-mail in the exchange between Cooney and Al-Almra is blank. Williams claims that it was deleted by CVS in an attempt to conceal evidence. On a somewhat related note, Williams also maintains that CVS "whited out" a portion of the repair line reports to make it appear as if she never requested the repair of the store's front doors, even though she insists she did. A party seeking sanctions for alleged spoliation of evidence, however, must prove that the alleged offending party acted in "bad faith." *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *see also Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). Accordingly, "[t]he Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey*, 431 F.3d at 203 (citing *King*, 337 F.3d at 556); *accord Ford v. Potter*, 354 F. App'x 28, 33 (5th Cir. 2009); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000), *cert. denied*, 532 U.S. 959 (2001). Williams has presented no evidence, apart from her own suppositions, that CVS deliberately altered the repair reports or deleted e-mails between Cooney and Al-Almra. Regarding the blank e-mail, CVS responds that it "has not been redacted in any way" and "[did] not contain any content." Furthermore, CVS disputes Williams's contention that it altered the repair reports, and the court's review of these documents finds no indication that they have, in fact, been altered. Thus, the record in this case does not contain sufficient evidence of bad faith or misconduct on the part of CVS to justify a finding of intentional spoliation.

determinative factor in the employer's decision to terminate the employee?" *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993); *McCreless v. Moore Bus. Forms, Inc.*, 111 F.3d 893, 893 (5th Cir. 1997) (recognizing that "casual, facially-neutral" remarks are "inadequate to prove pretext"). Furthermore, because Williams's evidence of pretext is "weak or non-existent," application of the Fifth Circuit's "stray remark" doctrine is appropriate. *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 323 n.3 (5th Cir. 2011); *see also Auguster*, 249 F.3d at 405 (applying the stray remark doctrine where "the plaintiff has failed to produce substantial evidence of pretext"). It is well-settled that such comments are evidence of discrimination "only if they are: 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Jackson*, 602 F.3d at 380. Here, while the comments cited by Williams meet some of the above criteria, they do not relate to the "protected class of persons of which [she] is a member," *i.e.*, African-American. *Id.*; *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 886 (S.D. Tex. 2010) (holding that remarks that did not relate to plaintiff's protected class were not evidence of discrimination); *Ricketts v. Champion Chevrolet*, No. C-04-242, 2005 WL 1924372, at *4 n.3 (S.D. Tex. Aug. 11, 2005) (classifying comments as stray remarks where "no evidence [was] presented that many of the comments were even related to Plaintiff's protected class"). Accordingly, the aforementioned comments were, at most, mere "stray remark[s]," which are insufficient to establish discrimination under Title VII. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991); *see also Patel v.*

*Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002), *cert. denied*, 537 U.S. 1108 (2003) (quoting *Rubinstein*, 218 F.3d at 400-01).

iv.   <u>Conspiracy</u>

Finally, Williams attempts to establish pretext by alleging a conspiracy between Kough and Cooney to "set her up" for discharge.   The record, however, is devoid of objective evidence illustrating that the men conspired to terminate Williams due to her race.   Indeed, the record evidence illustrates only that:   (1) the two met prior to Cooney's assuming the district manager position to discuss the employees who would be under his supervision, including Williams, and (2) Cooney telephoned Kough prior to Williams's termination to inquire where he kept a record of Williams's February 2007 warning for failing to protect company assets.   Thus, Williams is left with only her own speculation as to a conspiracy, which is insufficient at this stage of the proceeding.   *See Aryain*, 534 F.3d at 487; *Auguster*, 249 F.3d at 403; *Bauer*, 169 F.3d at 967.

At most, Williams may have presented some evidence suggesting that she was discharged for violating rules she arguably did not violate or that she had a legitimate reason for failing to comply.   But Title VII "does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."   *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984); *accord Summers v. City of Dothan*, 444 F. App'x 346, 349 (11th Cir. 2011).   "'Title VII addresses *discrimination*.'"   *Nix*, 738 F.2d at 1187 (emphasis in original) (quoting *Ferguson v. Veterans Admin.*, 723 F.2d 871, 872 (11th Cir.), *cert. denied*, 469 U.S. 1072 (1984)).   "Title VII is not a shield against harsh treatment in the workplace; it protects only in instances of harshness disparately distributed."   *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981); *accord Reine v. Honeywell Int'l, Inc.*, 362 F.

App'x 395, 397 (5th Cir.), *cert. denied*, 131 S. Ct. 140 (2010); *Roberts v. Unitrin Specialty Lines Ins. Co.*, No. **3**:06-CV-0380-B, 2008 WL 3832223, at *12 (N.D. Tex. Aug. 14, 2008.

Merely disputing Kough's and Cooney's assessment of her work performance will not necessarily support an inference of pretext. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999); *accord Perez*, 307 F.3d at 325; *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001). Hence, an employee cannot survive summary judgment just because she disagrees with the employer's assessment of her performance; the issue is whether the employer's perception of her performance, accurate or not, was the real reason for her termination. *See Bryant*, 413 F.3d at 478; *Evans*, 246 F.3d at 355 (citing *Shackelford*, 190 F.3d at 408-09).

Thus, Williams's contentions that her performance was satisfactory and that she did, in fact, report the broken door, even if true, do not demonstrate pretext. "The inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993); *accord Johnson v. Louisiana*, 369 F.3d 826, 832 n.7 (5th Cir. 2004); *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 579 n.4 (5th Cir. 2002); *Singh v. Shoney's Inc.*, 64 F.3d 217, 219 (5th Cir. 1995). In the instant case, there is simply no evidence suggesting that CVS lacked a good faith belief that Williams failed to protect company assets and terminated her on that basis.

In the final analysis, Williams's subjective perception of discrimination is all that remains. In fact, Williams admits that her conclusion that she was fired because of her race is based on a "gut feeling." Lay opinions, however, are insufficient to give rise to an inference that CVS's articulated reason was a pretext for discrimination. Indeed, it is well established that an

employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief. *Bauer*, 169 F.3d at 967; *see Moore v. Solar Grp.*, 311 F. App'x 722, 724 (5th Cir. 2009); *Aryain*, 534 F.3d at 487; *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004); *Roberson*, 373 F.3d at 654; *Tyler v. Union Oil Co.*, 304 F.3d 379, 395 (5th Cir. 2002). Williams's "bald assertions of race discrimination are inadequate to permit a finding that proscribed discrimination" motivated CVS's conduct. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995); *accord Allen v. Solo Cup Co.*, No. 3:05-CV-0848-R, 2006 WL 1949455, at *10 (N.D. Tex. July 13, 2006). Where, as here, Williams does not adduce objective evidence refuting the rational reasons articulated by the employer, pretext cannot be established by mere subjective beliefs that discrimination motivated the employer's actions. *See Moore*, 311 F. App'x at 724; *Aryain*, 534 F.3d at 487; *Roberson*, 373 F.3d at 654; *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).

Therefore, under the totality of the circumstances, Williams has failed to demonstrate that CVS's articulated reason for her discharge is false, much less that it is a pretext for race discrimination. As a consequence, Williams cannot prevail on her claim of discriminatory discharge, and summary judgment for CVS is warranted.

III.   Conclusion

Consistent with the foregoing analysis, the court finds that Williams has failed to present a claim that warrants relief. There remain no material facts in dispute, and CVS is entitled to judgment as a matter of law. Accordingly, CVS's motion for summary judgment is granted.

SIGNED at Beaumont, Texas, this 1st day of August, 2012.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE